**Gloria PITTMAN, Plaintiff–Appellee/Appellant,**

v.

**LASCO INDUSTRIES, INC., Defendant–Appellant/Appellee.**

Supreme Court of Tennessee, at Jackson.

Nov. 6, 1995.

William F. Kendall, III, Steven W. Maroney, Waldrop & Hall, Jackson, for Appellant/Appellee (Ins. Co.).

T. Verner Smith, Jackson, for Appellee/Appellant (Pittman).

### *ORDER*

PER CURIAM.

This case is before the Court upon Lasco Industries' motion for review pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review was not timely filed in accordance with Tenn.Code Ann. § 50–6–225(e)(5)(B), which requires filing within 15 days of issuance of the Panel's opinion. Tenn.R.App.P. 21(d), does not operate to extend the fifteen-day filing period established by the statute.

This Court is, therefore, without jurisdiction to consider the merits of the motion, and the motion for review is therefore dismissed. Costs will be paid by defendant, Lasco Industries, Inc., for which execution may issue if necessary.

### JUDGMENT ORDER

PER CURIAM.

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs will be paid by Lasco Industries, Inc., for which execution may issue if necessary.

### IN THE SUPREME COURT OF TENNESSEE SPECIAL WORKERS' COMPENSATION APPEALS PANEL AT JACKSON

Members of Panel: LYLE REID, Associate Justice, PHIL B. HARRIS, Retired Judge, and JOE C. LOSER, Jr., Retired Judge.

### *MEMORANDUM OPINION*

Mailed July 25, 1995

PHIL B. HARRIS, Retired Judge.

This workers' compensation appeal has been referred to this Special Workers' Com-

pensation Appeals Panel of the Supreme Court in accordance with T.C.A. Sec. 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law.

This matter comes to this court by way of a Worker's Compensation trial (referred to in the record as "first trial") heard by Chancellor Marion H. Holmes, Jr., on December 17, 1992, in the Chancery Court of Haywood County, Tennessee. Chancellor Holmes found in favor of the plaintiff, Gloria Pittman, and rendered judgment as follows:

(1) "Plaintiff suffered a compensable injury to her left arm on August 7, 1991, and proper notice was given" (both facts were stipulated on record);

(2) "Plaintiff is entitled to temporary total benefits for seven weeks from September 6, 1991, to September 20, 1991, and from October 22, 1991, to November 26, 1991;"

(3) "Plaintiff is entitled to 30% permanent partial disability to the arm...."

(4) "Plaintiff is entitled to recover the attached unpaid medical bills.........; prescription expenses.........; and mileage expense ...".

Defendant properly appealed from this judgment. Plaintiff then filed a pleading entitled "Motion to Reopen Case" and later a document entitled "Petition for Modification of Prior Worker's Compensation Award". An agreed Order Staying Judgment on Appeal pending determination of Plaintiff's Petition to Reopen was filed in this court.

June 10, 1994 the Petition for Modification was heard by Chancellor George R. Ellis in the Chancery Court of Haywood County, Tennessee in another "full hearing", after which Chancellor Ellis gave judgment as follows:

The Court finds that since the rendering of the decision on December 17, 1992, there has been an increase of incapacity due solely to the injury to the Plaintiff's left arm on August 17, 1991, from 30% permanent, partial disability to the left arm to 70% permanent, partial disability to the left arm. Your request to increase temporary disability benefits is denied. The issue of medicals will be left open for 30 days by stipulation.

The plaintiff appealed this ruling of the trial court and the defendant appeals the trial court's increase of permanent partial disability to the left arm from 30% to 70%.

Therefore, the issues presented here are (1) did the trial court err in finding plaintiff sustained an increase of disability following the first trial from 30% to 70% to the left arm; (2) did the trial court err in denying additional temporary total disability benefits at the second hearing; and (3) does plaintiff's motion for frivolous appeal have merit. Then, if this court finds the trial court's award of increased permanent partial disability to the arm from 30% to 70% is not justified in this case, an additional issue is presented as to whether the preponderance of the evidence sustains the original trial court's award of 30% permanent partial disability to the left arm.

 This court finds that the trial court is sustained by a preponderance of the evidence in its ruling after the "first trial" that plaintiff (1) suffered a compensable injury to her left arm on August 7, 1991, and proper notice was given; (2) is entitled to temporary total benefits for seven weeks (designating the weeks by date); (3) is entitled to 30% permanent partial disability to the arm; and (4) is entitled to recover designated unpaid medical bills, prescription expenses and mileage expenses. The trial court is further sustained by a preponderance of the evidence in its ruling on the "Petition for Modification" (1) that since the decision on December 17, 1992, there has been an increase of incapacity due solely to the injury to plaintiff's left arm on August 7, 1991, from 30% to 70% permanent partial disability to the left arm; and (2) denying request for increase of temporary total benefits. Therefore, we affirm the ruling of the trial court.

Our (Appellate) review is *de novo* upon the record of the trial court accompanied by a

presumption of the correctness of the findings of fact, unless the preponderance of the evidence is otherwise. T.C.A. Sec. 50–6–225(e)(2).

The attorneys stipulated that plaintiff was injured on August 7, 1991, in the scope and course of her employment with defendant and that proper notice was given. So, there is no issue involving these questions.

The record reveals plaintiff was a 34–year–old married female with two children, 18 and 14 years of age. She finished 9th grade in school and has no further schooling or technical training. Her work history consists of baby sitting, being a laborer in a needle industry and in assembling alternators. She started working for the defendant in February, 1991, as a machine operator, cutting plastic pipe and putting them in boxes, which she did until she was injured on August 7, 1991. She was trying to untangle pieces of pipe when she developed severe pain in her left arm. She initially went to see her family physician, Dr. Jerald White, and he referred her to Dr. Riley Jones, orthopedic surgeon in Memphis. She realized she should have informed her employer, which she then did, and her employer sent her to Dr. Clarey Dowling, Brownsville, Tennessee, who referred her to Dr. Glen Barnett at Jackson, Tennessee. Dr. Barnett diagnosed plaintiff's problem as carpal tunnel syndrome and sent her to Dr. Torstrick for a second opinion. Dr. Torstrick agreed and Dr. Barnett did carpal tunnel surgery on plaintiff's left arm October 30, 1991. She returned to work in November, 1991, and worked until she was laid off in April, 1992. She went back to see Dr. Barnett in March, 1992, and in April he sent her to Dr. Michael Brueggeman at the Jackson, Tennessee Pain Clinic. Her attorney sent her to see Dr. Joseph C. Boals, III, for evaluation. She has not actively sought employment since 1992 because, as she testified, she had hoped to go back to work at Lasco's (defendant's).

Dr. Glenn Barnett, neurological surgeon, saw plaintiff August 26, 1991, and felt she had "acute tenosynovitis of the left hand with some median nerve irritation". He tried conservative treatment without improvement. After several visits over several weeks he diagnosed carpal tunnel syndrome, which was confirmed by Dr. Torstrick, and Dr. Barnett performed carpal tunnel release surgery on plaintiff's left side October 20, 1991. Plaintiff had temporary relief but soon returned to see Dr. Barnett with same symptoms. After some fifteen visits Dr. Barnett saw plaintiff for last time on April 20, 1992—his office notes in the record reveal "She states she is better, but still quite bothered with her left hand. It still hurts. She still has numbness and tingling, . . . . . . . . I am going to ask her to have an evaluation at the Pain Clinic in Jackson and see if they have any additional ideas or thoughts. This has been a very unsatisfactory treatment program with little if any improvement following carpal tunnel release and I really feel that I do not have much else to offer to the lady at this time." He further says "I would feel that her permanent impairment will be 5 percent to the left arm."

Dr. Joseph C. Boals, III, orthopedic surgeon, saw plaintiff December 19, 1991, for evaluation. By his deposition he testified he found positive Tinel's and Phelan's Test; plaintiff in Jamar Dynamometer Grip Test, showed 18 lbs. on the left and 65 lbs. on right—normal would be 70 lbs. His diagnosis was residual (resulting) from carpal tunnel release in left wrist. He testified, "It was my opinion that she had a permanent physical impairment of approximately twenty percent of the upper extremity." This was his opinion some two months after her carpel tunnel release surgery.

Dr. Michael W. Brueggeman, neurologist with Semmes–Murphy Clinic, Jackson, Tennessee, saw plaintiff in April, 1992. His diagnosis was "tenosynovitis to her left hand", but says it later became evident she had "sympathetically maintained pain or R.S.D. (reflex sympathetic dystrophy). He states that while he was treating plaintiff from April, 1992, to May, 1993, she was complaining that none of the procedure (treatment) was very helpful. The TENS Unit was not

working very well, or the pain was spreading up to her elbow and left arm. After treatments with no apparent improvement he referred plaintiff to Dr. John Matthews who, by surgical procedure in August, 1993, cut the nerves of sympathetic system to plaintiff's left upper extremity (a left cervicodorsal sympathectomy). Dr. Brueggeman, who had last seen plaintiff on May 11, 1993, when asked in his deposition on May 18, 1994, about the status of plaintiff's problem, said "I felt she had some permanent impairment relating to this problem. I felt she had about seventy percent impairment to the left upper extremity." In answer to a question on cross-examination about whether or not plaintiff's complaints in May, 1993, were the same as in April, 1992, Dr. Brueggeman answered as follows:

"A Well, I think as these progress, typically with RSD it often starts with a what is sometimes very trivial injury and then develops into a more full-fledged pain syndrome over time. So there's an evolution with this as opposed to most injuries. The worst is at the beginning; you expect either no change or improvement. So this is a condition where over time, the symptoms get worse, and the—potentially the impairment or the problems get worse over time."

Further, in answer to a question on cross-examination about using AMA Guidelines in connection with nerve impairment, Dr. Brueggeman said, "I looked at it almost as if this was an amputation because she really has very little—well, in fact, it's even worse than an amputation. Not only does she have very little function and use of the left hand, she also has a lot of pain associated with it." He opined that she reached maximum medical improvement about two months after the nerve surgery.

The permanency of the impairment to the left arm is established by all the medical proof in this case. Dr. Barnett opines the impairment to be 5% to the left arm, Dr. Boals fixes the impairment at 20%, and Dr. Brueggeman at 70%. The extent of the vocational disability is a question of fact

for the trial court to determine from all the evidence, including lay and expert testimony, the rating of anatomical disability by the experts and the testimony of the injured employee which is relevant in determining the extent of vocational disability in Worker's Compensation Cases. *Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452 (Tenn.1988). The preponderance of the evidence in this record sustains the ruling made by each Chancellor in this case.

The record reveals this case first went to trial on December 17, 1992. At this first trial the defendant offered no proof whatsoever, other than the medical records of Dr. H. Glenn Barnett. An Order granting worker's compensation benefits was entered with the court on March 23, 1993. Plaintiff filed "Motion to Reopen Case" on September 17, 1993, pursuant to and in compliance with T.C.A. 50–6–231. A hearing on Plaintiff's Motion/Petition to Modify was conducted on June 20, 1994, wherein the Chancellor increased Plaintiff's award from 30% permanent partial disability to the left arm to 70% permanent partial disability to the left arm. An Order granting additional discretionary costs was entered with the trial court December 30, 1994. Both plaintiff and defendant appealed from the judgment of the trial court.

This court has held that the sole question for determination of trier of facts under statute governing modification of periodical payments of Workers' Compensation (T.C.A. 50–6–231) is whether or not there has been an increase or decrease of incapacity due solely to injury effective since the day of the original award. *Hartford Hosiery Mills v. Jernigan,* 149 Tenn. 241, 259 S.W. 546; *Dingus v. Holston Defense Corporation,* 211 Tenn. 20, 362 S.W.2d 249 (Tenn.1962).

This court further says in *Dingus,* supra, citing *Reynolds Tobacco Co. v. Rollins,* 203 Tenn. 565, 315 S.W.2d 1, "In the Reynolds case this Court concluded that a court hearing a case for an increased amount of a previous compensation award was not authorized to correct mistakes in conclusions of

fact drawn from evidence as to extent of disability which was considered at the original hearing." However, in the present case we take note of the fact that the Chancellor hearing the Petition to Modify had the benefit of Dr. Barnett's office notes pertaining to plaintiff's visits in March and April, 1993, wherein he expressed concern about plaintiff's carpal tunnel surgery being unsuccessful; Dr. Brueggeman's testimony by deposition which reflected his views and opinions after treating plaintiff thru May 11, 1993, wherein he opined she had R.D.S. (reflex sympathetic dystrophy) and which resulted in him referring plaintiff to Dr. John Matthews; and testimony as to Dr. Matthews removing or cutting some nerves of the sympathetic nervous system. This is in addition to seeing plaintiff, observing her demeanor and hearing her testify as to the change in her condition. This is quite different from the facts in *Reynolds*, supra, and *Dingus*, supra. The preponderance of the evidence supports the Chancellor's award of additional disability to plaintiff's left arm, and the proof supports the increase from 30% to 70% permanent partial disability to the left arm. Further, we cannot say the preponderance of the evidence does not support the trial court's denial of plaintiff's request to increase temporary total disability benefits.

Therefore, we affirm the judgment of the trial court (Chancellor Holmes) resulting from the original trial of this case in its entirety, noting that the award of 30% permanent partial disability to the arm is modified as stated hereinafter. Further, we affirm the judgment of the trial court (Chancellor Ellis) on the "Motion to Modify" whereby he held (1) there had been an increase of incapacity due solely to the injury to plaintiff's left arm on August 17, 1991, from 30% permanent partial disability to the left arm to 70% permanent partial disability to the left arm, and (2) plaintiff's request to increase temporary total disability benefits was denied.

The issue of medical bills was left open for 30 days by stipulation according to the record here. It is not clear whether or not this has been finally determined by a later ruling of the trial court. Therefore, this matter is referred back to the trial court to determine and complete the disposition of this matter, if needed.

■ Both parties appealed this case and each has presented good grounds for appeal. Therefore, Plaintiff's Motion for Penalties against the defendant for a frivolous appeal is denied.

The costs are assessed to the defendant.

LYLE REID, Associate Justice, and JOE C. LOSER, Jr., Retired Judge, concur.