# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**July 16, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

GARY LeROY CURTIS,                    )
                                      )
    Plaintiff/Counter-Defendant/  )
    Appellant,                    )
                                      )  Davidson Circuit
                                      )  No. 93D-2870
VS.                                   )
                                      )  Appeal No.
                                      )  01A01-9508-CV-00385
JANE WELTHA (WILLIAMS)                )
CURTIS,                               )
                                      )
    Defendant/Counter-Plaintiff/  )
    Appellee.                     )


APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE


For Gary LeRoy Curtis:                For Jane Weltha (Williams) Curtis:

R. Eddie Davidson                     Jack Norman, Jr.
Nashville, Tennessee                  Nashville, Tennessee

                                      Thomas F. Bloom
                                      Nashville, Tennessee


## AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the dissolution of a marriage of two persons who lived together as husband and wife for over thirty years but who were legally married for only ten years. Following a bench trial, the Fourth Circuit Court for Davidson County granted the wife a divorce, divided the marital estate, and directed the husband to pay the wife long-term spousal support and defray the wife's legal expenses in the divorce proceeding. On this appeal, the husband asserts that the trial court should not have dismissed his complaint for divorce, that the wife was not entitled to long-term spousal support, that the trial court's division of the marital estate was inequitable, and that the wife was not entitled to recover her legal expenses in the divorce litigation. We affirm the final judgment.

## I.

Gary LeRoy Curtis met Jane Weltha Curtis in 1960 at a dance hall in East Nashville. Mr. Curtis was nineteen years old and had completed the seventh grade. Ms. Curtis was a 24-year-old high school graduate who was married with two children. They began living together in 1961, and their only child was born in July 1962. Ms. Curtis eventually divorced her first husband in June 1969. The parties considered themselves to be married and held themselves out to the public as husband and wife from the very beginning of their relationship, even though they were not legally married. Their son's birth certificate indicated that they were married, and they filed joint tax returns as if they were married. Mr. Curtis and Ms. Curtis eventually married in Las Vegas in August 1981.

Both parties were employed during most of their time together. Mr. Curtis, an electrician by trade, worked for various employers until he went into business for himself in 1979 or 1980. He closed his first two businesses because of problems with the Internal Revenue Service over his employees' withholding taxes but later started Star Electric Company, a business employing three electricians, including Mr. Curtis and his son. In 1990, Mr. Curtis built a nine-hole golf course and driving range on leased property in Ashland City. Even though the golf course has not been profitable, Mr. Curtis views it as a source of

retirement employment and income. For her part, Ms. Curtis worked at Aladdin Industries, Inc. and May Hosiery Mills. Later, she started her own cleaning business called the Finishing Touch Cleaning Company and also kept the books for Mr. Curtis's businesses. As a result of their joint efforts, the parties accumulated a modest marital estate consisting primarily of various parcels of real property in East Nashville and Cheatham County.

The parties separated in February 1992 when Mr. Curtis moved into a trailer on a lot that the parties owned in Cheatham County. Mr. Curtis filed for divorce in August 1993, and Ms. Curtis responded with a counterclaim for divorce. In August 1994, the trial court directed Mr. Curtis to pay Ms. Curtis $1,700 per month in pendente lite support and to be responsible for the mortgage payments on the homeplace where Ms. Curtis was still living and on another piece of rental property in East Nashville.

The trial court modified its pendente lite support order three months later to clarify the allocation of the responsibility for the parties' major debts. The trial court specifically determined that Ms. Curtis should be responsible for paying the first mortgage on the homeplace and another note to a family acquaintance. The trial court also determined that Mr. Curtis's monthly support obligation should be decreased to $1,176.68 per month in January 1995 when the note to the family acquaintance would be paid off.

The trial court heard the evidence on March 15, 1995. On April 19, 1995, the trial court entered a final decree dismissing Mr. Curtis's divorce complaint and granting Ms. Curtis a divorce on the ground of inappropriate marital conduct. The trial court also directed Mr. Curtis to pay Ms. Curtis $1,176.64 per month in long term spousal support. The trial court also divided the marital property which consisted of the parties' real estate holdings and Mr. Curtis's business and directed Mr. Curtis to pay $7,945.00 to defray Ms. Curtis's legal expenses.

## II.
### THE DISMISSAL OF MR. CURTIS'S DIVORCE COMPLAINT

The threshold issue for our consideration relates to the trial court's dismissal of Mr. Curtis's complaint for divorce at the close of his proof. Mr. Curtis asserts that he proved grounds for divorce because Ms. Curtis had "caused or contributed to a financial quagmire which permeated the parties' marital relationship." We have determined that the trial court correctly determined that Mr. Curtis's proof did not substantiate his claim of inappropriate marital conduct.

Mr. Curtis initially sought a divorce because of irreconcilable differences under Tenn. Code Ann. § 36-4-101(11) (1996) or, in the alternative, because of inappropriate marital conduct under Tenn. Code Ann. § 36-4-102(a)(1) (1996). Ms. Curtis contested Mr. Curtis's irreconcilable differences claim. After the parties were unable to agree on the division of their marital property[1], the case went to trial on Mr. Curtis's request for a divorce on the ground of inappropriate marital conduct and Ms. Curtis's request either for a divorce from bed and board or a divorce on the ground of inappropriate marital conduct.

Mr. Curtis's proof with regard to his grounds for divorce related solely to Ms. Curtis's skills, or lack of skills, as a bookkeeper. He asserted that her inability to document and keep track of the withholding taxes for his employees precipitated serious problems with the Internal Revenue Service and that these problems eventually caused him to close his first two businesses. At the close of Mr. Curtis's proof, the trial court granted Ms. Curtis's motion for a "directed verdict" on the ground that he had failed to substantiate grounds for divorce.

We will treat Ms. Curtis's motion as a motion for involuntary dismissal under Tenn. R. Civ. P. 41.02(2) since motions for a directed verdict have no place in nonjury trials. *City of Columbia v. C.F.W. Constr. Co.,* 557 S.W.2d 734, 740 (Tenn. 1977). Unlike a motion for directed verdict, a Tenn. R. Civ. P. 41.02(2) motion requires the trial court simply to weigh and evaluate the plaintiff's evidence in the same way it would review the evidence at the close of all the proof and to grant the motion if the plaintiff has failed to make out a prima facie case. *Smith v. Inman Realty Co.,* 846 S.W.2d 819, 823-24 (Tenn. Ct. App. 1992). Our

---

[1]The courts cannot grant a divorce based on irreconcilable differences if the grounds for divorce are contested or denied, Tenn. Code Ann. § 36-4-103(e) (1996), or if the parties have failed to make "adequate and sufficient provision by written agreement . . . for the equitable settlement of any property rights between the parties." Tenn. Code Ann. § 36-4-103(b).

task on appeal is to review the trial court's decision to grant the motion using the familiar standard of review in Tenn. R. App. P. 13(d).

The grounds for divorce are controlled by statute. *Perrin v. Perrin,* 201 Tenn. 354, 367, 299 S.W.2d 19, 24 (1957); *Clothier v. Clothier,* 33 Tenn. App. 532, 538, 232 S.W.2d 363, 366 (1950). The divorce ground of "inappropriate marital conduct" authorized by Tenn. Code Ann. § 36-4-102(a)(1) (1996) is synonymous with "cruel and inhuman treatment" and "conduct towards the spouse as renders cohabitation unsafe and improper." The type of conduct warranting a divorce pursuant to Tenn. Code Ann. § 36-4-102(a)(1) includes conduct that willfully and persistently causes unnecessary suffering. *See Baber v. Baber,* 205 Tenn. 681, 682-683, 330 S.W.2d 307, 308 (1959); W. Walton Garrett, *Divorce, Alimony and Child Custody* § 6-3(1) (1996).

While the evidence calls into question Ms. Curtis's ability as a bookkeeper, it does not substantiate Mr. Curtis's claim that her shortcomings as a bookkeeper amounted to a willful and persistent effort on her part to cause him unnecessary suffering. The record contains no evidence that Ms. Curtis purposely made errors in the calculation and payment of Mr. Curtis's employees' withholding taxes in order to inflict suffering on Mr. Curtis. On the other hand, the record contains evidence of Mr. Curtis's indifference and infidelity. Accordingly, the evidence does not preponderate against the trial court's conclusions that Ms. Curtis had substantiated her claim of inappropriate marital conduct, while Mr. Curtis had not.

## III.
### THE DIVISION OF THE MARITAL PROPERTY AND DEBT

We turn next to the manner in which the trial court divided the parties' marital property and allocated the marital debt. Mr. Curtis asserts that the trial court's disposition of these matters was inequitable because it did not give appropriate weight to the reasons for part of the debt and to his contributions to the preservation of property Ms. Curtis inherited during the marriage. We have determined that the manner in which the trial court divided the marital property and allocated the marital debt is essentially equitable.

# A.

Most of the capital assets acquired by the parties while they lived together as husband and wife consisted of interests in real property. They purchased their home on Delaware Avenue in East Nashville in 1978 or 1979. Their evidence at trial placed a value on this property of between $55,000 and $75,000. There is an $18,000 first mortgage on the house, as well as a $27,000 second mortgage securing the loan required to satisfy an Internal Revenue Service claim.

The parties purchased two lots on Chapmansboro Road in Cheatham County in 1980 for $8,000. Some time later, they purchased a third lot adjacent to their other two lots for $14,000. There are two trailers on these lots, and Mr. Curtis is presently living in the trailer located on the third lot. The parties value the first two lots and trailer at between $6,600 and $10,000 and the value of the third lot with trailer at between $14,000 and $17,300.

In 1981 Mr. Curtis and his brother-in-law purchased ten acres of undeveloped property in Cheatham County. After Mr. Curtis's brother-in-law died, Ms. Curtis acquired the interests of four of the brother-in-law's children. At the time of the trial, the parties owned nine acres of the property. They placed a value on this property of between $4,500 and $10,000.

In 1990, Mr. Curtis constructed a nine-hole golf course and driving range on leased property in Cheatham County. The enterprise has yet to earn a profit, but Mr. Curtis anticipates that the golf course will provide him with income and constructive activity after he retires from his electrical business. The parties valued Mr. Curtis's interest in the golf course, including equipment and personal property, at between $1,413 and $15,000.

Finally, Ms. Curtis and her sister inherited a house on Ward Avenue in East Nashville following their mother's death. Ms. Curtis bought out her sister's interest using $8,000 made available by Mr. Curtis after her sister threatened to have the property sold. The house was used as rental property during the marriage

and is in need of repair. The parties placed a value on the house of between $25,000 and $30,300. Ms. Curtis's son from her first marriage is currently living in the house rent free.

The parties' evidence of the value of their property varies widely. Mr. Curtis asserted at trial that the net value[2] of the marital estate is $94,637, while Ms. Curtis valued the marital estate at $153,800. This difference is due to the parties' contradictory testimony concerning the fair market value of the house on Delaware Avenue,[3] the value of Mr. Curtis's interest in Gary's Golf Course,[4] and the value of Mr. Curtis's interest in Star Electric.[5] The trial court determined that Ms. Curtis should receive property valued between $95,300 and $106,600[6] and that Mr. Curtis should receive property worth between $33,037 and $103,500.[7] The trial court also directed Ms. Curtis to be responsible for the first mortgage on the Delaware Avenue house and determined that Mr. Curtis should be responsible for the second mortgage on the property.

**B.**

Trial courts have broad discretion in dividing marital property and in allocating marital debt. Tenn. Code Ann. § 36-4-121(a) (1991); *Fisher v. Fisher*,

---

[2]The net value of the marital estate is the value of the marital property less the marital debts.

[3]Ms. Curtis testified that the fair market value of the house on Delaware Avenue was $55,000, while Mr. Curtis stated that the house was worth $75,000.

[4]Mr. Curtis valued Gary's Golf Course at $1,413, while Ms. Curtis asserted that the interest was worth $15,000.

[5]Mr. Curtis valued Star Electric at $4,324, while Ms. Curtis valued the company at $70,000.

[6]The trial court determined that Ms. Curtis should receive the house on Delaware Avenue, the house on Ward Avenue, and two of the three lots on Chapmansboro Road in Cheatham County.

[7]The trial court awarded Mr. Curtis one of the lots on Chapmansboro Road, the nine acres of undeveloped property in Cheatham County, Mr. Curtis's interest in Gary's Golf Course, and Star Electric.

648 S.W.2d 244, 246 (Tenn. 1983) (division of marital property); *Cutsinger v. Cutsinger,* 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995) (holding that marital debts should be apportioned in the same way that marital property is divided); *Yaffee v. Yaffee,* Shelby Law No. 16, 1989 WL 76310, at *2 (Tenn. Ct. App. July 12, 1989), *perm. app. denied* (Tenn. Oct. 2, 1989) (holding that trial courts have discretion to apportion the marital debt). Accordingly, appellate courts ordinarily defer to the trial court's decisions in these matters unless they are inconsistent with Tenn. Code Ann. § 36-4-121(c) or are unsupported by a preponderance of the evidence. *Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994); *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989).

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen,* 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown,* 913 S.W.2d at 168. Marital debts should, where possible, follow their associated assets, *Mondelli v. Howard,* 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989), and should be apportioned by considering the reason for the debt, the party who benefitted from the debt, and the party better able to assume the debt. *Mahaffey v. Mahaffey,* 775 S.W.2d at 624. In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990).

## C.

Mr. Curtis takes issue with three aspects of the trial court's division of the marital estate. First, he argues that he should not be responsible for the $27,000 second mortgage on the Delaware Avenue property because this debt was incurred to satisfy tax problems caused by Ms. Curtis's bookkeeping errors. Second, he complains that the trial court did not recognize that the parties used $8,000 of marital funds to buy out Ms. Curtis's sister's interest in the Ward Avenue property. Third, he insists that it would have been "more equitable" to award him all three lots on Chapmansboro Road in Cheatham County.

The trial court did not err by requiring Mr. Curtis to be responsible for the $27,000 second mortgage on the Delaware Avenue property. This debt arose out of Mr. Curtis's business and was incurred for business purposes. The debt was not due to any intentional waste or dissipation of assets by Ms. Curtis. Since Mr. Curtis received the business and is better able to assume this debt, the trial court had adequate basis to require him to be responsible for it.

This record provides no basis for us to conclude that the trial court's division of the marital estate did not take into consideration the use of marital funds to preserve Ms. Curtis's interest in the Ward Avenue property or the overall fairness of the division of property. The evidence concerning the value of the property varied significantly, and both parties provided the trial court with no valuation evidence other than their own subjective opinions. The record contains some basis for concluding that Mr. Curtis's estimate of the value of Star Electric is low and that Ms. Curtis's estimate of the value of Gary's Golf Course is high. With these adjustments, it appears that the division of the net marital estate was essentially equal and, accordingly, was equitable under the circumstances of this case.

## IV.
### THE LONG-TERM SPOUSAL SUPPORT AWARD

Mr. Curtis also takes issue with the trial court's decision to require him to pay long-term spousal support in the amount of $1,176.64 per month until Ms. Curtis's death or remarriage. While he concedes that Ms. Curtis may need support because she is in a more debilitated condition, he argues that the trial court considered only Ms. Curtis's need without considering his ability to pay. The record contains no basis for determining that the trial court failed to consider the applicable factors in Tenn. Code Ann. § 36-5-101(d)(1) (1996) when it set spousal support in this case.

Decisions concerning spousal support depend on the unique facts of each case and require a thoughtful balancing of many factors, including those identified in Tenn. Code Ann. § 36-5-101(d)(1). *Hawkins v. Hawkins,* 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd,* 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993).

The trial courts have broad discretion in determining whether to award spousal support, as well as the nature, duration, and amount of the support. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). As a general matter, the appellate courts are disinclined to alter a trial court's decision regarding spousal support unless the evidence does not support it or it is inconsistent with the policies embodied in the applicable statutes. *Brown v. Brown,* 913 S.W.2d at 169; *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988).

Spousal support decisions are not intended to be punitive. *Brown v. Brown,* 913 S.W.2d at 169; *McClung v. McClung*, 29 Tenn. App. 580, 584, 198 S.W.2d 820, 822 (1946). They are intended to assist the economically disadvantaged spouse to become as self-sufficient as possible, and, when economical rehabilitation is not feasible, to mitigate to the greatest extent practicable, the harsh economic realities of divorce. *Brown v. Brown,* 913 S.W.2d at 169. The most common factors influencing spousal support decisions continue to be the need of the spouse seeking support and the ability of the obligor spouse to pay. *Crain v. Crain,* 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996); *Hawkins v. Hawkins,* 883 S.W.2d at 625.

Mr. Curtis made it clear both before and during the trial that he wished to avoid paying any type of support to Ms. Curtis. At one point, he even offered to give her practically all the marital property in return for not being required to pay her spousal support. The trial court did not adopt this proposal. While Mr. Curtis now states that he is willing to pay temporary support for a reasonable period, he asserts that requiring him to continue to pay Ms. Curtis $1,176.64 per month[8] until her death or remarriage is unfair because he is unable to pay it and because the trial court has also required him to be responsible for the Southern Financial debt.

Mr. Curtis is currently fifty-six years old and has no physical or mental impairments that impede his ability to work. He has operated his own electrical business for over fifteen years. Despite his limited formal education, the trial court specifically found that he was an "astute businessman." Despite the income reported on his 1994 tax returns, Mr. Curtis testified that he "always made real

---

[8]The award is essentially similar to Mr. Curtis's modified pendente lite support obligation.

good money" and that in some years he earned $45,000 to $50,000 after taxes. Ms. Curtis, on the other hand, is somewhat impaired because of her back injury and has limited employment skills.

Based on the evidence with regard to the length of the marriage, the age and health of the parties, and the parties' respective abilities to earn income and to acquire capital assets, we cannot say that the trial court erred by determining that Mr. Curtis could pay $1,176.64 per month in long-term spousal support. This award remains within the trial court's jurisdiction; accordingly, Mr. Curtis will always have the prerogative to request an adjustment in his support obligation should his ability to earn income or Ms. Curtis's needs change materially.

## V.

### THE AWARD FOR ATTORNEY'S FEES

Mr. Curtis insists that the trial court erred by requiring him to pay $7,945 of Ms. Curtis's legal expenses at trial. At the same time, Ms. Curtis asserts that Mr. Curtis should be required to defray her legal expenses for this appeal. We have determined that the trial court did not err in awarding Ms. Curtis her legal expenses at trial; however, we have determined that she should be responsible for her own attorney's fees on appeal.

The courts consider an award for legal expenses in a divorce proceeding as an additional support award. *Gilliam v. Gilliam,* 776 S.W.2d at 86; *Raskind v. Raskind,* 45 Tenn. App. 583, 601, 325 S.W.2d 617, 625 (1959). These awards are appropriate when an economically disadvantaged spouse lacks funds to pay his or her legal expenses. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980), but are inappropriate when the spouse requesting the award is able to pay his or her own lawyer either from earnings or from the assets received as a result of the divorce. *Inman v. Inman,* 811 S.W.2d 870, 874 (Tenn. 1991); *McCarty v. McCarty,* 863 S.W.2d 716, 722 (Tenn. Ct. App. 1992).

Ms. Curtis is currently sixty years old. She will require the modest property awarded her as a result of the divorce to support her when she is no longer able to work. Her work future is somewhat clouded because of her back injury, and

accordingly, we do not find that the trial court erred in awarding her an additional $7,945 to defray her legal expenses. However, we have determined that Mr. Curtis should not be required to pay more than $7,945 for Ms. Curtis's legal representation in this case. Accordingly, we deny Ms. Curtis's request for an additional award to defray her legal expenses on this appeal.

## VI.

### MS. CURTIS'S REQUEST FOR A FRIVOLOUS APPEAL

As a final matter, Ms. Curtis has requested this court to award her damages for a frivolous appeal under Tenn. Code Ann. § 27-1-122 (1980). Appeals are considered frivolous for the purpose of awarding damages if they are devoid of merit or if they have little prospect that they would ever be successful. *Combustion Eng'g, Inc. v. Kennedy,* 562 S.W.2d 202, 205 (Tenn. 1978); *Industrial Dev. Bd. of Tullahoma v. Hancock,* 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). While being partially successful on appeal places a case beyond Tenn. Code Ann. § 27-1-122, *see Pittman v. Lasco Indus., Inc.,* 908 S.W.2d 932, 937 (Tenn. 1995), being unsuccessful does not necessarily indicate that an appeal is frivolous.

We must always balance the right to seek appellate review of a trial court's decision with the concern over the waste of resources and delay caused by appeals brought for strategic reasons not relating to the merits of the issues involved in the case. While Mr. Curtis has not been successful on this appeal, we have determined that his issues are genuine and that he did not pursue this appeal for the purpose of delay. Accordingly, we deny Ms. Curtis's request for damages for a frivolous appeal.

## VII.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Gary LeRoy Curtis and his surety for which execution, if necessary, may issue.

-12-

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
SAMUEL L. LEWIS, JUDGE