PAULA RENEE STEPHENS COONER,   )
   ) **Davidson Circuit**
         **Plaintiff/Respondent/Appellant,**   ) **No. 83D-265**
   )
**VS.**   )
   ) **Appeal No.**
**GARY KENT COONER,**   ) **01-A-01-9701-CV-00021**
   )
         **Defendant/Petitioner/Appellee.**   )

**FILED**

**October 10, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

### IN THE COURT OF APPEALS OF TENNESSEE
### MIDDLE SECTION AT NASHVILLE

### APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### HONORABLE MURIEL ROBINSON, JUDGE

L. R. DeMarco, #2652
Suite 400
Washington Square
Nashville, TN 37201-1476
ATTORNEY FOR PLAINTIFF/APPELLANT

Louise R. Fontecchio, #4065
20th Floor, First American Center
315 Deaderick Street
Nashville, TN 37238-2075
ATTORNEY FOR DEFENDANT/APPELLEE

### REVERSED, VACATED AND REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:
WILLIAM B. CAIN, SPECIAL JUDGE

DISSENT IN SEPARATE OPINION:
WILLIAM C. KOCH, JR., JUDGE

PAULA RENEE STEPHENS COONER,   )
                                          )  **Davidson Circuit**
        **Plaintiff/Appellant,**     )  **No. 83D-265**
                                          )
**VS.**                                 )
                                          )  **Appeal No.**
**GARY KENT COONER,**           )  **01-A-01-9701-CV-00021**
                                          )
        **Defendant/Appellee.**    )

# O P I N I O N

The captioned plaintiff/wife, has appealed from a post-divorce order in a contempt proceeding instituted by the captioned defendant/husband.

The designated record contains only the following:

1.      Divorce Decree entered August 16, 1983, which awarded the wife a divorce on grounds of cruel and inhuman treatment, custody of a minor child aged 2-1/2, with stated visitation by the husband, support for the child, division of marital estate, and alimony. The decree further committed the husband to confinement for contempt for 10 days.

2.      Agreed order entered February 1, 1994, finding the husband in contempt "for violation of previous order" and imposing a 30-day suspended sentence, awarding judgment to the wife for $5,832.92 for arrears child support, and issuing a wage assignment for collection of past and future child support and alimony. The order concludes as follows:

> It is further ORDERED, ADJUDGED and DECREED that this present agreement is made with the understanding that the parties transferred physical possession of the minor child to the Respondent on November 8, 1993, and will be filing an Order changing custody of the minor child and setting an amount of current support for and after that date. In the event the parties are not able to agree upon an amount of current support, or payment by the Respondent on these arrearages, the parties will file a motion to have the matter set for further hearing on these issues.

> The Respondent shall pay the cost of this cause for all of which execution may issue if necessary.

3. An order entered June 6, 1994, providing:

Court FINDS that since the child, Jason Cooner is now in the custody of Gary Kent Cooner, the mother, Paula Renee Stephens, should be ordered to pay child support in accordance with the Tennessee Child Support Guidelines in the amount of $482.00 per month, beginning November 8, 1993.

1. The obligation of Paula Renee Stephens for payment of current child support, and the obligation of Gary Kent Cooner for payments on prior child support arrearages shall mutually offset each other so that neither party shall be required to make any actual payments to the other. Instead, Gary Kent Cooner shall receive a credit on the outstanding balances due for child support arrearages in the amount of $482.00 per month beginning immediately and continuing until further orders of this court.

2. Gary Kent Cooner shall also receive a credit against the outstanding child support arrearages in the amount of $2,651, representing child support owed from November 8, 1993.

3. The wage assignment previously issued to Mrs. Winner's Chicken & Biscuits shall be withdrawn, and Mr. Cooner's employer shall no longer be required to deduct any amounts from any wages, salary or other income due to Gary Kent Cooner, from and after April 22, 1994.

4. Paula Renee Stephens shall continue to provide medical insurance coverage for the minor child, and the parties shall each be responsible for payment of ½ of any medical expenses not covered by insurance, in accordance with prior orders of this Court. Provided, however, each party shall pay his/her share of non-covered medical expenses directly to the medical care provider upon receipt of notification of the amounts due.

4. A petition for contempt filed by the husband September 6, 1996, alleging:

2. The child has remained in the continuous care and custody of the father until the weekend of August 30 through September 2, 1996 when he was visiting with the mother. During the weekend when the father was not at home, the child and mother, Paula Renee Stephens, came to the father's home and without the father's knowledge or consent the mother, Paula Renee Stephens, entered the home in the company of the child, removed all of the child's possessions, as well as furniture, television, and other items from the child's room in the father's home and took the child, the furniture, and other items to the home of the mother.

3. Upon returning to the home on the afternoon of September 2, 1996, and discovery that the child and all of his belongings were missing, the father contacted the mother, who admitted that she had in fact been in the father's home and had removed the child and the child's belongings from the father's home without the father's permission. She however stated that she was not willing to return the child to the care of the father because, in her opinion, the child was old enough to decide for himself where he wants to live.

5. The father believes that the mother is not only guilty of criminal acts of breaking and entering and theft of the father's property, but in fact is further in willful criminal contempt of the prior orders of this Court and that she should be required to appear on a date certain to hear the charges against her, and upon a finding of guilt should be punished accordingly.

6. The father further believes that the mother is in willful civil contempt for her refusal to return the child immediately to the home of the father, and that she should be required to appear and show cause, if any she has, why she should not be punished for her willful disobedience to this Court's orders.

WHEREFORE, PETITIONER PRAYS:

1. That this Petition be filed and the mother, Paula Renee Stephens, be served with process and be given an opportunity to appear and answer;

3. That the mother be given notice of the charges against her and be required to appear on a date certain to hear the charges against her and be allowed to present defense to those charges if she so chooses;

4. That at the hearing of this cause the mother be found in both willful criminal and civil contempt of the orders of this Court and be punished accordingly.

5. A Temporary Restraining Order entered on September 6, 1996, stating:

TO: Paul Renee Stephens

You are hereby enjoined and restrained from continuing to deprive the father of his lawful custody of the child, Jason Cooner, pending a hearing in this matter and you are further hereby ordered to immediately return the child to the care and control of the father, along with all of the possessions which were removed from the home of the father between August 30 and September 2, 1996.

6.      The response of the wife to the petition for contempt and counter-petition stating:

> 7. Since the last Order was entered there has been significant and material change in the circumstances of the parties which would warrant a change of custody of the minor child, Jason Cooner, age 15 ½, from the Father to the Mother, The Mother would show that it is in the best interest of the minor child that custody be changed from the Father to the Mother.
>
> The mother would show that the girlfriend of the Father has been living with the Father with the minor child present. The Father has been spending numerous nights away from home leaving the child with his girlfriend. In August 1996, the minor child discovered marijuana and pornographic pictures in a cabinet in the home of the Father. The pornographic pictures were of the Father and his girlfriend and previous girlfriends.
>
> 8. The Mother would further show unto the Court that the minor child has been attending an alternative school, The Center for Family Life, and the Mother has made application for the child to attend Davidson Academy, a private school, but the child has not yet been accepted.
>
> 9. The Mother presently resides with another minor son and her present husband and has sufficient room in her homeplace for the minor son.

7.      A 16-page transcript of a hearing held on October 31, 1996.

8.      The order presently under review, was entered November 12, 1996, providing:

> It appearing to the Court from the testimony presented, including that of Paula Cooner Stephens who voluntarily took the stand on her own behalf that on or about the 2nd day of September, 1996, and continuing until September 7, 1996, Paula Cooner Stephens did willfully and deliberately violate the prior Orders of this Court by depriving Gary Kent Cooner of the lawful custody of the child and all of his possessions, including furniture belonging to Gary Kent Cooner from the home of Gary Kent Cooner without permission of Mr. Cooner, and further by taking the child into her care and custody and failing to return him until she was served with a Restraining Order of this Court on or about September 7, 1996. The Court finds that said conduct constitutes flagrant disregard of this Orders of this Court and that it constitutes willful criminal contempt.
>
> It is, therefore, ORDERED as follows:

1.  That Paula Stephens be, and hereby is, found in willful criminal contempt of the Orders of this Court and is sentenced to serve one (1) night in the Davidson County Jail as punishment for said conduct.

2.  That Louise R. Fontecchio, attorney for Gary Kent Cooner, is awarded a judgment against Paul Stephens in the amount of $750.00 for her services as attorney for Gary Kent Cooner in this matter for which execution may issue if necessary.

On appeal, the wife presents the following issues for review:

1.  Whether the Trial Court abused its discretion in holding the mother guilty of criminal contempt.

2.  Whether the Trial Court abused its discretion in its punishment of the mother.

3.  Whether the Court abused its discretion in the award of attorneys fees to the father.

The husband repeats the issues of the wife in reverse form and adds an allegation of frivolous appeal.

## I.

### First Issue

### <u>CRIMINAL CONTEMPT</u>

It is clear from the above quoted November 12, 1996, order of the Trial Court that the basis of the finding of contempt included:

From September 2, 1996, to September 7, 1996, the wife violated the previous orders of the Trial Court by depriving the father of the lawful custody of his child.

The "previous orders" included:

(a)  The above quoted agreed order entered on February 1, 1994, which recognized the transfer of custody to the father by the parties who promised to file an order to this effect.

(b)  The above quoted temporary restraining order entered on September 6, 1996, which was, in effect, a mandatory order of custody which was disobeyed.

The wife argues:

> The defendant in a trial for criminal contempt has been held to have the right to notice of the specific proceedings against him and the right to defend. The Tennessee Rules of Criminal Procedure, Rule 42 (b) require that a criminal contempt be prosecuted on notice which, "shall state the time and place of hearing, allowing reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and to describe it as such."
>
> Also, in cases of criminal contempt the defendant is entitled to all of the constitutional protections of any criminal defendant, including the presumption of innocence and the right to require that guilt be shown beyond a reasonable doubt. Storey vs Storey, 835 S.W.2d 593 (1992); Strunk vs Lewis Coal Co., 547 S.W.2d 252 (1976); Gompers vs Buck's Store and Range Co., 221 U.S. 418, 444-446, 31 S.Ct. 492, 499-500, 55 L.Ed. 797, 807-08 (1911).

Surprisingly, the husband's brief contains no response to this argument.

The threshold issue in every appeal from a finding of contempt is whether the contempt is civil or criminal. *Jones v. Jones*, Tenn. App. 1997, filed February 26, 1997. The answer turns on the conduct involved and the sanctions imposed, not on the labels of "civil" or "criminal" affixed by the parties or the trial court. *Sherrod v. Wix*, Tenn. Ct. App. 1992, 849 S.W.2d 780, 787. Making the distinction is essential because doing so determines the procedure to be followed and the constitutional protections to be afforded the alleged contemner. *Storey v. Storey*, Tenn. Ct. App. 1992, 835 S.W.2d 593, 599.

The purpose of a civil contempt proceeding is to coerce the contemner to comply with a court's order, and is intended to benefit the party seeking the contempt order. *State ex rel. Agee v. Chapman*, Tenn. Ct. App. 1995, 922 S.W.2d 516, 519. Civil contempt sanctions are open-ended and terminate when the contemnor complies with the court order. The contemnor "carries the keys to the jail in his or her own pocket." *State ex rel. Anderson v. Daughtrey*, 137 Tenn. 125, 127, 191 S.W. 2d 974 (1917); *Crabtree v. Crabtree*, Tenn. Ct. App. 1986, 716 S.W.2d 923, 925.

In this case, the trial court sentenced Ms. Cooner to one night in jail. There was no way that Ms. Cooner could avoid the sentence imposed upon her, and the sentence does not benefit Mr. Cooner. Thus, the purpose of Ms. Cooner's imprisonment appears to be punitive and criminal in nature.

TRCP Rule 42 provides as follows:

> **Criminal Contempt**. - (a) Summary Disposition. - A criminal contempt may be punished summarily if the judge certifies that he or she saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.
>
> (b) Disposition upon Notice and Hearing. - A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing except with the defendant's consent. Upon a verdict of finding of guilt the court shall enter an order fixing the punishment.

Here the criminal contempt was indirect, as Ms. Cooner's acts were committed outside the court's presence. Thus, the Circuit Court could only impose punishment for indirect criminal contempt after providing the notice required by Tenn.R.Crim.P. 42(b).

In *Gompers v. Buck's Stove & Range Company*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed 797 (1911), the U.S. Supreme Court reversed an order of imprisonment for contempt on other grounds, but said:

> Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the

> defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself.

In *Storey v. Storey*, Tenn. App. 1992, 835 S.W.2d 593, a sentence to the workhouse was reversed for failure to afford proper notice to the defendant of the nature of the contempt with which he was charged.

In *Strunk v. Lewis Coal Co.*, Tenn. App. 1976, 547 S.W.2d 252, an incarceration for criminal contempt was reversed because the Trial Court failed to follow the requirement of proof of guilt beyond a reasonable doubt.

In the present case, the record contains the petition for contempt which was evidently served upon the wife, for she filed a response denying that her actions/omissions constituted contempt. Otherwise, the record is silent as to the other elements of due process.

The transcript of the October 31, 1996 hearing is a melange of informal procedure. First, there are 10 pages of statements of fact by counsel. Then, there is are 4 pages of testimony of the wife under questioning by both counsel and the Trial Judge. Finally, there are two pages of colloquy between the Trial Judge and Counsel regarding the punishment to be imposed.

In the present case, the accused wife filed an answer to the petition for contempt admitting her failure to promptly comply with the peremptory order of the Trial Court to deliver possession of the child to the father, but, offering excuses for her failure to do so. The answer made no demand for due process or complaint of denial of due process.

Criminal contempt proceedings are intended to vindicate the authority of the courts by punishing persons who willfully disobey lawful court orders. *State ex rel. Agee v. Chapman*, 922 S.W.2d 516, 519 (Tenn. Ct. App. 1995); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App.

1993). In order to warrant a judgment of criminal contempt, the conduct must be specifically contrary to a court order, and the conduct must be willful or intentional. This record contains no indication that an order had ever been entered specifically directing Ms. Stephens not to accompany her son into Mr. Cooner's house without his presence or permission. Accordingly, notwithstanding how inappropriate or unwise Ms. Stephens's conduct might have been, it cannot support a judgment of criminal contempt.

Ms. Stephens could conceivably have violated the trial court's September 6, 1996 order directing her to return the parties' son to Mr. Cooner and to refrain from interfering with Mr. Cooner's custody rights. However, it is unlikely that this order could have been the basis for a petition for contempt filed contemporaneously with the order itself. Thus, the trial court's criminal contempt judgment cannot stand if it was based on Ms. Stephens's violation of the September 6, 1996 order. Ms. Stephens received no notice that she was being accused of violating the September 6, 1996 order, and of equal importance, Mr. Cooner failed to prove beyond a reasonable doubt that Ms. Stephens did not comply with this order.

Civil and criminal contempt proceedings should not be tried simultaneously because of the significant differences in the respective burdens of proof and procedural rights accorded to the person accused of contempt. Proceedings of indirect criminal contempt cannot be commenced without the notice required by Tenn. R. Crim. P. 42(b). Giving this notice at an early stage eliminates any possible confusion concerning the nature of the proceeding and better enables the alleged contemner to invoke his or her procedural rights. *Jones v. Jones*, App. No. 01A01-9607-CV-00346, 1997 WL 80029, at *3 (Tenn. Ct. App. Feb. 26, 1997) (No Tenn. R. App. P. 11 application filed).

Appellate courts review the substance of contempt judgments using the "abuse of discretion" standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993). Trial courts

must comply strictly with the absolute provisions of the law. *Robinson v. Air Draulics Eng'g. Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). Strict oversight of the procedure employed by trial courts is necessary to ensure that courts wield their broad contempt power in accordance with the rule of law and the requirements of procedural fairness. *Sanders v. Sanders*, App. No. 01A01-9601-GS-00021, 1997 WL 15228, at *3 (Tenn. Ct. App. Jan. 17, 1997) (No Tenn. R. App. P. 11 application filed).

The procedure employed by the trial court in this case was fundamentally flawed because of the lack of notice required by Tenn. R. Crim. P. 42(b) and because the trial court was apparently attempting to consider Mr. Cooner's petitions for criminal contempt and for civil contempt simultaneously. Even though Ms. Stephens did not frame the issue precisely in these terms, we should take it up in order to prevent prejudice to the judicial process and because the procedural oversight involved substantial rights and more likely than not affected the outcome of the proceeding.

The substantive and procedural flaws in this contempt proceedings cannot be remedied by vacating the contempt judgment and remanding the case for retrial. We reverse the judgment of contempt and remand the case to the trial court with directions to dismiss Mr. Cooner's petition to hold Ms. Stephens in contempt.

Trial courts may award attorneys fees in proceedings to enforce child support decrees or in proceedings involving the custody or change of custody of children. Tenn. Code Ann. § 36-5-103(c) (1996). However, this was not such a proceeding. Criminal contempt proceedings, unlike civil contempt proceedings, are for the benefit of the court not for the benefit of the parties. *State ex rel. Agee v. Chapman*, 922 S.W.2d at 519. Accordingly, in the absence of a statute or rule enabling prevailing parties in criminal contempt proceedings to recover their attorney's fees, this Court holds that the trial court did not have authority to order Ms. Stephens to pay Mr. Cooner for

the legal expenses he incurred to pursue his criminal contempt petition.

In the absence of contrary authority, this Court holds that during the entire judicial process which produces an incarceration, the due process is open to question and review; so that, even without prior complaint, the question of due process is open for review, even on appeal. Also, this Court holds that whenever the question is raised, the Court has an affirmative duty to inquire into the question unrestrained by the niceties of burden of proof, and to determine from an independent review of all circumstances whether due process was accorded to the accused.

Pertinent portions of the transcript are:

> MS. FONTECCHIO: I may be able to make real short work of this case. It's about a mile long. We are here today --- my client has had simple custody of the child, Jason, since the order of this Court that was entered on the 6th day of June, 1994.
>
> On Labor day weekend this year, September of 1996, the child was spending the weekend with his mother. Mr. Cooner came home and discovered that the child and all of his belongings, including furniture from the child's room which didn't even belong to the child, was gone. Mr. Cooner talked with Mrs. Stevens, learned that she, her current husband and the child had come to Mr. Cooner's residence. The child had let them into the house. They packed up all of the child's belongings, including furnishings, and took the child and all of his belongings to Mrs. Cooner's (sic) home with no court order, no nothing.
>
> Now, they are -- in addition to which, while they were in the home, the child went to another part of the house, which was not in his room, opened a locked file cabinet, removed from that locked file cabinet certain personal items of Mr. Cooner's, showed them to his mother. She knew that he had gone into this locked file cabinet and gotten them. She let him do it, and then that night when Mr. Cooner met with her at a restaurant to confront her with this behavior, she -- her response was, basically that the child was old enough to decide where he liked.
>
> Now, she's filed an answer in which she has basically admitted everything that happened on that weekend. She said she did not go through Mr. Cooner's personal belongings, but she doesn't deny that she knew that Jason

did and allowed him to do it. And her justification for it is, Your Honor, she has alleged that these personal belongings consisted of some pornographic pictures and some old drug paraphernalia, small marijuana paraphernalia and some marijuana seeds. The fact of the matter is, Your Honor, whether or not -- and they have also filed a petition for change of custody.

Now, it's our position that the issue of the -- if there was marijuana or if there wasn't marijuana, may need to be tried in the custody, but that didn't give her justification. This -- whatever was there was in a locked file cabinet. It was not in the possession of the child. It wasn't in the child's room. It wasn't shown to the child, and Mrs. Cooner -- excuse me, Mrs. Stevens had no business bringing her current husband into Mr. Cooner's house loading all the property, including furniture that belonged to Mr. Cooner, on a truck and taking it to their house; that she's in willful contempt of the Court's orders and should be punished accordingly. And she's admitted it.

THE COURT: Well, where's the child living now?

MS. FONTECCHIO: With Mr. Cooner.

THE COURT: Okay.

MS. FONTECCHIO: We got a restraining order from Your Honor to give the child and his furnishings back, and that was when --

MR. DeMARCO: She voluntarily relinquished the child, Your Honor.

THE COURT: All right. Did he get all of the furniture and everything back?

MR. DeMARCO: I don't know that he did.

(Whereupon, Ms. Fontecchio questioned Mr. Cooner.)

MR. DeMARCO: Yes, Your Honor. The divorce was back in 1983. Mrs. Cooner got custody of the child at a very young age. This is a case where contempt were filed by her against him for not paying child support. He served 90 days one time, 10 days another time.

Two and a half years ago, maybe three -- close to three years ago, he went to go live with his father. She agreed. He's been living with his father since that time. There was an incident Labor Day, as Ms. Fontecchio stated. The child found marijuana there, found not only pornographic pictures, but there were pictures of Mr. Cooner

- 13 -

engaged with sexual relations with his girlfriends.

THE COURT: Well, but did he have it in a locked cabinet?

MR. DeMARCO: Well, the lock, it was broke. It was one of these cabinets, according to the boy as I understand it, you just pull open. It was locked, but you just pull it open.

THE COURT: Well, what is it she admits here?

MR. DeMARCO: She admits that she went over there to help her son to move to her house. She kept him beyond the period of time, which I guess as far as the contempt goes, the violation of the Court order, it would be the fact that she kept the child beyond the usual visitation time.

THE COURT: Well, were there any criminal charges for her entering his house and taking his property?

MR. DeMARCO: No, Your Honor.

THE COURT: Okay. Well, she's lucky that he didn't have her arrested for that. All right. Is she going to admit this contempt?

MR. DeMARCO: She admits she had went over there and did that and kept him -- well, as far as keeping him beyond the time, she admits that. I don't think it's a --

THE COURT: What do you want me to do about this?

MS. FONTECCHIO: Your Honor, --

MR. DeMARCO: She admits she went over there, and we've got a petition for contempt on her change of custody, which I don't want to try today. Your Honor won't let us try it today but --

THE COURT: What do you want me to do with her? She admits her contempt.

MS. FONTECCHIO: Your Honor, we want her sentenced to jail for ten days for her contempt. We believe she's in willful contempt of the orders of the Court. And I have to tell you, Your Honor, she did not voluntarily return the child. September 30th, we filed this petition for contempt and got a restraining order; and, it was pursuant to the restraining order on -- sometime after September 30th. I'm not sure if it was the first or the second of October that it was actually served on her.

- 14 -

THE COURT: But do y'all want me to try this, or do you want me to pronounce the sentence?

MS. FONTECCHIO: I want -- there's no factual dispute, Your Honor. She's admitted it.

THE COURT: Do you want me to hear her reasons why she did this, or do you want me to just deal with the contempt?

MR. DeMARCO: I would like you to hear her. There's one other extenuating circumstance. I would like to put her on, Your Honor.

THE COURT: All right. Take the stand, please, ma'am.

PAULA R. STEVENS,
having been first duly sworn, testified as follows:

Q. You recognize you should not have gone into Mr. Cooner's house uninvited?

A. At the time, I didn't feel that, given what Jason had found, that Mr. Cooner would -- would try to force him to stay there knowing that he wanted to move over, particularly given the fact that I voluntarily let him move over to his father's.

THE COURT: You kind of need to answer his question.

BY MR. DeMARCO:

Q. Okay. You recognize you shouldn't have done it. Okay. What was your reasoning for going over there?

THE WITNESS: At the time I did it, I didn't feel that it was going to be a problem. I felt that Mr. Cooner would honor Jason's desires to move over there, particularly given the incriminating things that were found there.

THE COURT: Well, from what you're telling me you found, they're not particularly incriminating.

Q. Anyway, did you have a conversation with Mr. Cooner the evening of, I believe, Labor Day evening?

A. Right. We met that afternoon and discussed the situation, discussed what he found and discussed Jason's desire to move back home. Mr. Cooner, at the end of the conversation, told Jason, "Okay --

MS. FONTECCHIO: Objection..

- 15 -

THE WITNESS: -- I don't want you to just think about this overnight. I want you to think about it for a couple of weeks, and then, in a couple of weeks we'll talk," and we left it at that.

BY MR. DeMARCO:

Q. What was your understanding at that point?

A. I felt that he had given us permission to do that. That when he said we'll talk about it in two weeks.

Q. And then what happened?

A. And then on that next Friday, that was Monday -- no, it was Saturday, the sheriff came over with the restraining order, and we had to move all of his stuff back.

CROSS-EXAMINATION BY MS. FONTECCHIO:

Q. Mrs. Stevens, the conversation you had with Mr. Cooner was after the fact, after you had already gone to his home, moved Jason, all the belongings, including the furniture, to your home; isn't that correct?

A. Jason was apprehensive about how his father was going to react, so that's correct.

Q. So Mr. Cooner didn't give his consent before you went into his home and moved his furniture out of his house?

A. No.

THE COURT: All right. Mrs. Stevens, you're not at liberty to disobey any court order, and clearly your actions were really quite shocking and uncalled for. I have no alternative but to find you in willful criminal contempt of the orders of this Court. I'm going to sentence you to a night in jail. You violate these orders again, and you'll do much more time.

The state of the record presents several issues of law -

First, where a person accused of criminal contempt files an answer to the petition for contempt and appears for trial with counsel who presents no demand for due process , is the issue of due process waived?

This Court is convinced that the constitutional right of due process requires that  the

sentence in the present case be vacated and that the cause be remanded with direction to dismiss the petition for criminal contempt.

Mr. Cooner requests damages for a frivolous appeal under Tenn. Code Ann. § 27-1-122 (1980). Since Ms. Stephens was partially successful on appeal, this appeal is not frivolous, and Mr. Cooner is not entitled to Tenn. Code Ann. § 27-1-122 damages. See *Pittman v. Lasco Indus., Inc.*, 908 S.W.2d 932, 937 (Tenn. 1995).

The plaintiff/mother requests that she be relieved of paying part of the father's attorneys fees and, instead, requests this Court to require the father to pay all or part of her legal expenses in the Trial Court and on appeal. In the absence of a statute on rule enabling the prevailing parties in criminal contempt cases to recover their attorney's fees, this Court holds that this Trial Court did not have the authority to order Ms. Stephens to pay Mr. Cooner for the legal expenses he incurred in prosecuting his petition for criminal contempt.

The judgment of criminal contempt and sentence therefor is reversed and vacated. The cause is remanded for retrial under the strict requirements of due process. Costs of this appeal are taxed against the petitioner/husband.

**REVERSED, VACATED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

_____
WILLIAM B. CAIN, SPECIAL JUDGE

DISSENT IN SEPARATE OPINION
WILLIAM C. KOCH, JR., JUDGE